UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.A.A., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-03646-SHK <br><br> **OPINION AND ORDER** |

Plaintiff S.A.A.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

I. BACKGROUND

Plaintiff filed applications for DIB and SSI on May 26, 2016, alleging disability beginning on May 1, 2016. Transcript ("Tr.") 166-80.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on February 15, 2019, ALJ MaryAnn Lunderman determined that Plaintiff was not disabled. Tr. 15-24. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on February 18, 2020. Tr. 1-6. This appeal followed.

II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the

---

[2] A certified copy of the Administrative Record was filed on September 21, 2020. Electronic Case Filing Number ("ECF No.") 17. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).  Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

#### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).  "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a).  Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled'

at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB or SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB or SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2021." Tr. 17. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since May 1, 2016, the alleged onset date (20 C.F.R. [§§] 404.1571 et seq. and 416.971 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: disorders of the back, major dysfunction of the joints, other and unspecified arthropathies and obesity (20 CFR [§§] 404.1520(c) and 416.920(c))." Tr. 18. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except the climbing of ramps and stairs must be limited to occasionally while the climbing of ladders, ropes, or scaffolds must be precluded entirely from work duties as assigned. Additionally, balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees) and crawling must be limited to occasionally. Finally, handling and fingering, for both fine and gross manipulation with the left upper extremity must be limited to occasionally.

Id. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR [§§] 404.1565 and 416.965)." Tr. 22.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on November 27, 1966 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR [§§] 404.1563 and 416.963)." Id. The ALJ observed that "[Plaintiff] has a limited education and is able to communicate in English (20 CFR [§§] 404.1564 and 416.964)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See [Social Security Regulation ("SSR")] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR [§§] 404.1569, 404.1569a, 416.969, and 416.969a)." Id. Specifically, the ALJ found that Plaintiff could

perform the light, unskilled occupations of "Salon attendant" as defined in the dictionary of occupational titles ("DOT") at DOT 359.567-014, "Usher" at DOT 344.677-014, and Counter clerk at DOT 249.366-010. Tr. 23. The ALJ based her decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that Plaintiff "has not been under a disability, as defined in the . . . Act, from May 1, 2016, through [February 15, 2019], the date of th[e] decision (20 CFR [§§] 404.1520(g) and 416.920(g))." Id.

### C. Issues Presented

In this appeal, Plaintiff argues that the ALJ erred in the: (1) evaluation of Plaintiff's symptoms and testimony; (2) determination of Plaintiff's RFC; and (3) vocational analysis. ECF No. 26, Joint Submission ("Joint Sub.") at 3.

### D. Court's Consideration Of First Issue

#### 1. Parties' Arguments

Plaintiff argues that "the ALJ failed to articulate legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony." Id. at 4. Plaintiff asserts that "the reasons put forth by the ALJ [are] inconsistent with the record" and that "[t]he ALJ is also not permitted to cherry pick from the evidence in reaching the conclusion to reject [Plaintiff's] testimony." Id. (citation omitted).

Defendant responds that "Plaintiff's claim that the ALJ mischaracterized the record is without any merit and the ALJ reasonably relied on objective medical evidence to find that Plaintiff's symptom allegations conflicted with the objective

7

1 medical evidence." Id. at 20.  Defendant adds that "the opinions of record did not
2 support Plaintiff's claim of disabling impairments." Id.  Defendant also adds that
3 "the ALJ also reasonably found that Plaintiff's ability to engage in activities such
4 as doing household chores, taking care of his personal hygiene, holding a
5 newspaper, working on puzzles, and driving a car undermined his allegations of
6 disabling functional limitations." Id. at 20-21 (citations omitted).  Defendant
7 asserts that "[a]lthough Plaintiff alleged he performed some of the activities with
8 limitations, these activities certainly contradicted Plaintiff's reports of significant
9 numbness and weakness in the left arm and hand." Id. at 21.  Finally, Defendant
10 asserts that "the ALJ noted that Plaintiff elected not to have recommended
11 surgery[,]" presumably for the proposition that the ALJ reasonably rejected
12 Plaintiff's symptom statements relating to Plaintiff's left upper extremity on this
13 basis. Id. (citing Tr. 19-20, 257, 262).

### 2. ALJ's Consideration Of Plaintiff's Symptom Statements

15 The ALJ found that Plaintiff's "medically determinable impairments minght
16 [sic] reasonably be expected to cause the alleged symptoms.  However, [Plaintiff's]
17 statements concerning the intensity, persistence and limiting effects of these
18 symptoms are not entirely consistent with the medical evidence and other evidence
19 in the record for the reasons explained in this decision." Tr. 21.  The ALJ
20 explained that:

21 With respect to [Plaintiff's] allegations of physical disability, I
22 find these are not entirely consistent with the medical evidence.  The
23 neck pain with radicular symptoms are not as severe as alleged.  For
24 example, [Plaintiff] reports numbness and significant weakness in the
25 left arm and hand.  Despite some pain, he had full range of motion and
26 only slightly reduced strength in the left upper extremity.  For the most
27 part, [Plaintiff] was able to move and function fully when using the left
28 hand.  [citing Tr. 240-47].  A recent examination revealed a full range

|   |   |
|---|---|
| 1 | of motion and strength in the left upper extremity. [citing Tr. 293]. |
| 2 | Additionally, [Plaintiff's] extreme limitations in sitting, standing and |
| 3 | walking are not persuasive. During examination, [Plaintiff] was sitting, |
| 4 | appearing well with no obvious issues in alertness, orientation, mood |
| 5 | or memory. [citing Tr. 293]. [Plaintiff] was not in distress. [citing Tr. |
| 6 | 244]. His gait was normal. [citing Tr. 240-47, 260, 293]. |

7  Tr. 20-21. The ALJ also noted that with respect to Plaintiff's "cervical pain with
8  radicular symptoms to his left upper extremity[,]" "[a]lthough this has caused some
9  reduction in strength and range of motion (at times), [Plaintiff] is able to function
10 rather normally in activities of daily living [("ADLs")]." Tr. 21. The ALJ
11 observed that Plaintiff "is able to live alone, perform hygiene, household chores
12 (laundry and wash dishes), hold a newspaper, work on puzzles and drive a motor
13 vehicle without any significant limitations." Id.

14              **3.   Standard To Review ALJ's Analysis Of Plaintiff's Symptom**
15                    **Statements**

16       When a claimant has medically documented impairments that "might
17 reasonably produce the symptoms or pain alleged and there is no evidence of
18 malingering, the ALJ must give 'specific, clear, and convincing reasons for
19 rejecting' the testimony by identifying 'which testimony [the ALJ] found not
20 credible' and explaining 'which evidence contradicted that testimony.'" Laborin v.
21 Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting
22 Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015). "This is not an
23 easy requirement to meet: 'the clear and convincing standard is the most
24 demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995,
25 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920,
26 924 (9th Cir. 2002)).

27       "The ALJ may consider inconsistencies either in the claimant's testimony or
28 between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d

1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's] doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### 4. ALJ's Decision Is Not Supported By Substantial Evidence

Here, the ALJ's rejection of Plaintiff's symptom statements regarding Plaintiff's neck pain with radicular symptoms to Plaintiff's left arm and hand is not supported by substantial evidence because the ALJ relied on only select evidence in the record when rejecting Plaintiff's statements while ignoring other evidence that appears to support Plaintiff's statements. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Specifically, as noted above, the ALJ rejected Plaintiff's statements relating to his left arm and hand because: (1) Plaintiff "had full range of motion and only slightly reduced strength in the left upper extremity"; (2) Plaintiff "was able to move and function fully when using the left hand"; (3) "[a] recent examination revealed a full range of motion and strength in the left upper extremity"; and (4) [Plaintiff] is able to function rather normally in [ADLs]." Tr. 20-21 (citing Tr. 240-47, 293). This finding, however, ignores evidence that Plaintiff reportedly had:

- "left upper extremity radiating pain with weakness of elbow flexion extension, wrist flexion extension, and interossei"; cubital tunnel, and decreased grip strength in July 2016, Tr. 235;

- "left upper extremity pain and numbness and weakness on examination" in August 2016, Tr. 239;
- paresthesia of the left hand in October 2016, Tr. 243-44;
- "tended to favor his right arm. He had difficulty removing his shirt with his left upper extremity and had spinal weakness" in October 2016, Tr. 243-44;
- "chronic neck pain with left upper extremity radiculopathy with numbness, tingling, [and] pain" in October 2016, Tr. 243;
- decreased grip strength of the left hand in October 2016, Tr. 244, 246;
- slow, painful range of motion in the left arm in October 2016, Tr. 245;
- decreased motor strength in the left upper extremity; and paresthesia in the left hand in October 2016, Tr. 246;
- restricted flexion, extension, abduction, and adduction of the left shoulder due to pain in November 2016, Tr. 263;
- restricted flexion, extension, radial and ulnar deviation of the left wrist in November 2016, id.;
- decreased grip strength of the left hand in November 2016, id.;
- "chronic neck pain" that "radiates down [the left] shoulder and arm with numbness/tingling into digits 3-5" in June 2016, Tr. 265;
- decreased handgrip strength on the left side, "numbness and tingling sensations in [Plaintiff's] left upper extremity[,]" "[u]pper extremity reflexes were diminished at both triceps and present at both elbows[,]" and "limited range of motion of the cervical spine in all directions, secondary to pain, tightness, and stiffness" in March 2014, Tr. 275, 284;
- been referred for pain management for neck pain that radiated to his left upper extremity, was given a "soft neck collar[,]" and reportedly "need[]ed Shockwave treatment to the Left elbow to further decrease his pain" in March 2014, Tr. 273-85;

11

- "neck pain which is sharp and constant[,] . . . numbness of the fingertips of his left hand[,] . . . numbness down the left arm[,] " "left shoulder pain which is sharp[,]" "loss of strength[,]" "tenderness and atrophy of the right and left trapezii[,]" "loss of cervical lordosis[,]" and "tenderness of the spinous processes at C5-C7 of the cervical spine in January 2014, Tr. 327;
- decreased grip strength in the left hand and "numbness sensation in the left hand in January 2014, Tr. 328;
- decreased range of motion of the left shoulder in January 2014, Tr. 329; and
- "numbness from [his] shoulder to [his] fingers" and "cannot carry weight more than a sheet of paper" in November 2016, Tr. 262.

Although the ALJ considered some of the above evidence earlier in the decision when discussing Plaintiff's medical records, and although some of the evidence noted above is from before the relevant time period and is, thus, of limited relevance for determining Plaintiff's disability during the relevant time period, the ALJ ignored all of this evidence when rejecting Plaintiff's symptom statements relating to Plaintiff's limitations caused by his left upper extremity impairments. The ALJ's error in failing to consider this evidence when rejecting Plaintiff's symptom statements was material because Plaintiff's symptom statements suggest that Plaintiff's limitations are greater than the ALJ acknowledged when preparing Plaintiff's RFC analysis.

The RFC is the maximum a claimant can do despite their limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the

claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

By failing to properly evaluate Plaintiff's symptom statements and to incorporate all of Plaintiff's functional limitations into the RFC that were supported by the above discussed evidence, the ALJ's RFC finding and, by extension, the dispositive hypothetical question posed to the VE at the hearing were not supported by substantial evidence in the record. Consequently, the ALJ's step five finding, which was reliant on the VE's testimony, is not supported by substantial evidence in the record. As such, the Court finds that remand is appropriate so that the ALJ may reevaluate Plaintiff's symptom statements based on the above discussed evidence.

However, before concluding, the Court next turns to the ALJ's finding that Plaintiff's ADLs undermine Plaintiff's symptom statements and finds that the Agency needs to reexamine this issue as well. "The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina, 674 F.3d at 1112.

Based on the record before the Court, Plaintiff's ADLs appear to be consistent with his stated limitations. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility" and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); see also Molina, 674 F.3d at 1112-13, superseded by regulation on other grounds ("a claimant need not vegetate in a dark room in order to be eligible for benefits") (citation and internal quotation marks omitted). The Ninth Circuit "'has repeatedly asserted that the mere fact that

1  a plaintiff has carried on certain daily activities . . . does not in any way detract
2  from her credibility as to her overall disability.'" Orn v. Astrue, 495 F.3d 625, 639
3  (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).
4  It is only when a "claimant is able to spend a substantial part of h[er] day engaged
5  in pursuits involving the performance of physical functions that are transferable to
6  a work setting, [that] a specific finding as to this fact may be sufficient to discredit
7  an allegation of disabling excess pain." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.
8  1989).

9        For example, it is unclear how Plaintiff's ability to read a newspaper, do a
10 puzzle, or do dishes or laundry undercuts Plaintiff's symptom testimony that he
11 had limited ability to lift, hold, and carry things with his left hand.  Moreover, the
12 ALJ again erred by overstating Plaintiff's ADLs by relying on only select portions
13 of Plaintiff's statements regarding his ADLs.  Holohan, 246 F.3d at 1207-08.

14       As an example, the ALJ found that Plaintiff can do "household chores
15 (laundry and wash dishes) . . . without any significant limitations," Tr. 21.
16 However, an examination of Plaintiff's testimony reveals that Plaintiff stated he
17 only "[s]ometimes . . . empt[ies] little bit [of] the dishwasher.  Sometime[s] [he]
18 put[s] some stuff in the dishwasher, but not usually.  [Plaintiff's] girlfriend, she
19 make [sic] usually." Tr. 49.  Moreover, Plaintiff testified that he does laundry only
20 "[s]ometime[s]" and that he "cannot lift it, if it [is] too heavy." Tr. 50.  Plaintiff
21 added that when doing laundry, he "make[s] it like one piece, one piece, couple
22 pieces, whatever [he] need[s].  But usually [his] girlfriend, she do[es] it." Id.

23       Thus, the record reveals that Plaintiff did not testify that he can do the dishes
24 or laundry without any significant limitations as the ALJ found.  Rather, the record
25 reveals that Plaintiff indicated he can sometimes add and remove a "little bit" of
26 dishes to and from the dishwasher and that he can sometimes add one or two pieces
27 of clothing to or from the laundry, but that his girlfriend usually handles these
28 tasks.  Consequently, Plaintiff's ability to do dishes and laundry without limitation

14

as the ALJ found was not a clear and convincing reason to reject Plaintiff's symptom statements because the record indicates that Plaintiff could not perform these tasks without limitation.

Similarly, contrary to the ALJ's finding that Plaintiff can "work on puzzles . . . without any significant limitation[,]" Tr. 21, a review of Plaintiff's testimony reveals that Plaintiff testified he can work on puzzles "[s]ometime[s] when [he] feel[s] okay" but that Plaintiff "cannot work too much" on puzzles, only "like 10, 15 minutes. Then [he] go[es] back to [his] chair to sit down or lay down." Tr. 49. Thus, the record indicates that Plaintiff can only work on puzzles for short periods of time and only when he feels okay. It is unclear how Plaintiff's ability to work on puzzles in such a limited way contradicts Plaintiff's stated limitations with respect to his left upper extremity. As such, the ALJ's reliance on Plaintiff's ability to work on puzzles without limitation was not a clear and convincing reason to reject Plaintiff's symptom statements because the record reveals that Plaintiff could not even do this simple task without limitations.

Additionally, contrary to the ALJ's finding that Plaintiff can "hold a newspaper[,]" Tr. 21, Plaintiff indicated only that he "[r]ead[s a] little bit [of the] newspaper when [he] finish[es] TV." Tr. 49. There is no indication on the record before the Court that Plaintiff holds the newspaper without any significant limitations when he reads it as the ALJ found. Thus, Plaintiff's ability to read a newspaper does not appear to contradict Plaintiff's stated limitations with respect to his left upper extremity and was, therefore, not a clear and convincing reason to reject Plaintiff's statements.

In light of the foregoing, the ALJ's observations of Plaintiff's ADLs does not support the ALJ's rejection of Plaintiff's stated limitations relating to Plaintiff's left upper extremity. On remand, the ALJ shall specifically indicate how Plaintiff's ability to perform the above discussed ADLs contradicts Plaintiff's symptom statements relating to his left upper extremity.

Finally, although Defendant argues that "the ALJ noted that Plaintiff elected not to have recommended surgery[,]" id. at 21 (citing Tr. 19-20, 257, 262), presumably for the proposition that the ALJ reasonably rejected Plaintiff's symptom statements relating to Plaintiff's left upper extremity on this basis, this argument fails for two reasons.

First, although the ALJ noted Plaintiff's election to not have surgery elsewhere in the decision when discussing Plaintiff's medical records, the ALJ did not cite this as a reason for rejecting Plaintiff's symptom statements relating to Plaintiff's left upper extremity. Thus, the Court declines to affirm the ALJ's decision on this basis because it cannot affirm the ALJ's decision on grounds not invoked by the ALJ. See Stout, 454 F.3d at 1054 (the Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner) (citation omitted).

Moreover, the ALJ observed only that Plaintiff "elected not to have the recommended surgery" when discussing Plaintiff's medical records, but did not address the believability of Plaintiff's proffered reason for rejecting the surgery, which the Court discusses below. Tr. 19. Consequently, even if the Court could consider reasons not provided by the ALJ for rejecting Plaintiff's symptom statements, the ALJ's mere acknowledgement that Plaintiff rejected surgery, without more, under the facts of this case, was not a clear and convincing reason to reject Plaintiff's symptom statements. See Trevizo v. Berryhill, 871 F.3d 664, 679-80 (9th Cir. 2017) (finding error where the ALJ rejected the plaintiff's symptom statements, in part, because the plaintiff declined more aggressive treatment when "[t]he ALJ did not address the believability of [the plaintiff's] proffered reasons" for rejecting more aggressive treatment).

Second, the record reveals that Plaintiff provided a good reason for not pursuing the recommended surgery—Plaintiff's doctor purportedly indicated that Plaintiff's condition would not necessarily improve following surgery and Plaintiff was scared that surgery could make his symptoms worse. See Tr. 57 (Plaintiff

16

1  testifying that doctors "told me you need surgery, but they don't give me 100%
2  guarantee they going to fix this problem.  I don't want to go worse than whatever
3  I'm living now, in case the operation doesn't go smooth or the right way . . . . I
4  don't want to take the risk.").  Consequently, the Court finds that Plaintiff's
5  decision to decline surgery in this case, was not a clear and convincing reason to
6  reject Plaintiff's symptom statements.  See Fair, 885 F.2d at 603 ("[A]n
7  unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt
8  on the sincerity of the claimant's pain testimony" unless one of a "number of good
9  reasons for not doing so applies."); see also Trevizo, 871 F.3d at 680 n.8 (finding
10 that "it is inappropriate to factor against [plaintiff's] symptom testimony that she
11 declined" more aggressive treatment that came with possible negative
12 repercussions because "[t]aken to its logical conclusion, this could amount to a
13 requirement that patients take any prescribed pain medications, regardless of their
14 addictive or dangerous qualities, simply to avoid being found to have exaggerated
15 pain.").
16      For the above discussed reasons, the Court finds that the ALJ's decision was
17 not supported by substantial evidence and that remand for further proceedings is
18 appropriate so that the ALJ may reconsider Plaintiff's symptom statements in light
19 of the above discussed evidence.  Because the Court remands as to the above
20 discussed issue, it does not address Plaintiff's remaining assignments of error.

21                          **IV.   CONCLUSION**

22      Because the Commissioner's decision is not supported by substantial
23 evidence, IT IS HEREBY ORDERED that the Commissioner's decision is
24 **REVERSED** and this case is **REMANDED** for further administrative proceedings
25 under sentence four of 42 U.S.C. § 405(g).  See Garrison, 759 F.3d at 1009
26 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have
27 power to enter . . . a judgment affirming, modifying, or reversing the decision of
28

the Commissioner . . . , with or without remanding the cause for a rehearing.")
(citation and internal quotation marks omitted).

      IT IS SO ORDERED.

DATED: 03/30/2021

                        HONORABLE SHASHI H. KEWALRAMANI
                        United States Magistrate Judge